1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                   CENTRAL DISTRICT OF CALIFORNIA
10  DINA SAUNDERS              )      NO. CV 09-0938-CT
                              )
11          Plaintiff,        )      OPINION AND ORDER
                              )
12          v.                )
                              )
13  MICHAEL J. ASTRUE,        )
    Commissioner of           )
14  Social Security,          )
                              )
15                            )
            Defendant.        )
16  _____)
                              )
17
18
19      For the reasons set forth below, it is ordered that judgment be
entered in favor of defendant Commissioner of Social Security ("the
20
Commissioner") because the Commissioner's decision is supported by
21
substantial evidence and is free from material legal error.
22
23
                        SUMMARY OF PROCEEDINGS
24
        On February 10, 2009, Dina Saunders ("plaintiff"), filed a
25
complaint seeking judicial review of the denial of benefits by the
26
Commissioner pursuant to the Social Security Act ("the Act").  The
27
parties filed a consent to proceed before the magistrate judge.  On June
28

3, 2009, plaintiff filed a memorandum in support of her motion for summary judgment.    On July 1, 2009, the Commissioner filed a cross-motion for summary judgment.  On July 7, 2009, plaintiff filed a reply.

## SUMMARY OF ADMINISTRATIVE RECORD

### 1.   Proceedings

In June 2005, plaintiff filed applications for disability insurance benefits (TR 92-101),[1] and, on June 23, 2005, for Supplemental Security Income ("SSI"), alleging disability since October 1, 2002, due to depression, fibromyalgia, anxiety, and lyme disease.  (TR 116).  The applications were denied administratively.  (See TR 79-83).

On April 7, 2006, plaintiff filed a request for a hearing before an administrative law judge ("ALJ").  (TR 88).  On May 16, 2007, plaintiff, represented by an attorney, appeared and testified before an ALJ.  (TR 36-63).  The ALJ also considered the testimony of a vocational expert ("VE").  (TR 63-68).

On August 16, 2007, the ALJ issued a decision that plaintiff was not disabled, as defined by the Act, because she retains the residual functional capacity ("RFC") to perform medium work, except for a moderate impairment in her ability to perform especially detailed or complex tasks, and thus was not eligible for benefits.  (TR 7-16).

On August 23, 2007, plaintiff filed a request with the Social Security Appeals Council to review the ALJ's decision (TR 5-6), and on July 28, 2008, she filed a brief in support of that request, (TR 149-

---

[1]    "TR" refers to the transcript of the record of administrative proceedings in this case and will be followed by the relevant page number(s) of the transcript.

2

54).   On December 24, 2008, the request was denied.   (TR 1-3).
Accordingly, the ALJ's decision stands as the final decision of the
Commissioner.

Plaintiff subsequently sought judicial review in this court.

    2.   Summary Of The Evidence

The ALJ's decision is attached as an exhibit to this opinion and
order materially summarizes the evidence in the case.

**PLAINTIFF'S CONTENTIONS**

Plaintiff essentially contends that the ALJ erred:

1.   With respect to her analysis of the medical evidence; and,

2.   In failing to assess plaintiff's subjective symptoms and
     credibility.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405 (g), this court reviews the Commissioner's
decision to determine if: (1) the Commissioner's findings are supported
by substantial evidence; and, (2) the Commissioner used proper legal
standards.   Macri v. Chater, 93 F.3d 540, 543 (9th Cir. 1996).
Substantial evidence means "more than a mere scintilla," Richardson v.
Perales, 402 U.S. 389, 401 (1971), but less than a preponderance.
Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

When the evidence can reasonably support either affirming or
reversing the Commissioner's conclusion, however, the Court may not
substitute its judgment for that of the Commissioner.   Flaten v. Sec'y
of Health and Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

The court has the authority to affirm, modify, or reverse the
Commissioner's decision "with or without remanding the cause for
rehearing."   42 U.S.C. §405 (g).

**DISCUSSION**

1.   <u>The Sequential Evaluation</u>

A person is "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423 (d) (1) (A).

The Commissioner has established a five-step sequential evaluation for determining whether a person is disabled.  First, it is determined whether the person is engaged in "substantial gainful activity."  If so, benefits are denied.

Second, if the person is not so engaged, it is determined whether the person has a medically severe impairment or combination of impairments.   If the person does not have a severe impairment or combination of impairments, benefits are denied.

Third, if the person has a severe impairment, it is determined whether the impairment meets or equals one of a number of "listed impairments." If the impairment meets or equals a "listed impairment," the person is conclusively presumed to be disabled.

Fourth, if the impairment does not meet or equal a "listed impairment," it is determined whether the impairment prevents the person from performing past relevant work.   If the person can perform past relevant work, benefits are denied.

Fifth, if the person cannot perform past relevant work, the burden shifts to the Commissioner to show that the person is able to perform other kinds of work.   The person is entitled to benefits only if the

4

1 | person is unable to perform other work.  20 C.F.R. §§ 404.1520, 416.920;
2 | Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).
3 |     2.   Issues
4 |         A.   Medical evidence (Issue # 1)
5 |     Plaintiff essentially contends the ALJ did not give sufficient
6 | weight to the conclusions of two doctors, treating physician Luis
7 | Tincopa, M.D., and treating psychiatrist, Charles Wilson, M.D.   The
8 | court disagrees.
9 |     The Ninth Circuit has ruled that an ALJ should give a treating
10 | physician's opinion greater weight than that of an examining physician.
11 | Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("It is clear
12 | that more weight is given to a treating physician's opinion than to the
13 | opinion of a non-treating physician because a treating physician 'is
14 | employed to cure and has a greater opportunity to know and observe the
15 | patient as an individual.'") (quoting Magallanes v. Bowen, 881 F.2d 747,
16 | 751 (9th Cir. 1989); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.
17 | 1987).  "The treating physician's opinion is not, however, necessarily
18 | conclusive as to either a physical condition or the ultimate issue of
19 | disability."  Andrews, 53 F.2d at 1041.  The proper weight that an ALJ
20 | should give to a treating physician's opinion depends on whether
21 | sufficient data supports the opinion and whether the opinion comports
22 | with other evidence in the record.  20 C.F.R. §§ 404.1527, 416.927.
23 |     Moreover, the ALJ may disregard a treating physician's opinion
24 | whether or not that opinion is contradicted.  Andrews, 53 F.3d at 1041.
25 | Before rejecting a treating physician's uncontroverted opinion, however,
26 | the ALJ must present clear and convincing reasons for doing so.
27 | Andrews, 53 F.3d at 1041; Montijo v. Secretary of Health & Human
28 |

1  Services, 729 F.2d 599, 601 (9th Cir. 1984).  "Even if the treating

2  doctor's opinion is contradicted by another doctor, the Commissioner may

3  not reject this opinion without providing 'specific and legitimate

4  reasons' supported by substantial evidence in the record for so doing."

5  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Saelee v. Chater, 94

6  F.3d 520 (9th Cir. 1996).  However, "where the opinion of the

7  [plaintiff's] treating physician is contradicted, and the opinion of a

8  nontreating source is based on independent clinical findings that differ

9  from those of the treating physician, the opinion may itself be

10  substantial evidence; it is then solely the province of the ALJ to

11  resolve the conflict."  Andrews, 53 F.3d at 1041.

12                          I.    Dr. Tincopa

13      The ALJ committed no material error in evaluating Dr. Tincopa's

14  opinion.  Dr. Tincopa's opined that plaintiff did not have the residual

15  functional capacity to perform even sedentary work.  (TR 280-85).  That

16  opinion directly conflicted that of Mark Borigini, M.D., a consultative

17  examining physician.  Dr. Borigini opined that plaintiff had the

18  residual functional capacity to perform work consistent with medium

19  level exertion.  (TR 213-16).  The ALJ was free to resolve this conflict

20  and did so in favor of Dr. Borigini.  The ALJ did not materially err in

21  doing so.  Although plaintiff faults the ALJ for failing to consider

22  certain records chronicling Dr. Tincopa's treatment of plaintiff's

23  physical complaints, those records do not show that Dr. Tincopa treated

24  plaintiff's physical impairments.  Rather, they show plaintiff's self-

25  reporting of physical discomfort and depression and that Dr. Tincopa

26  prescribed Prozac to treat that depression.  (TR 287-307).  The records

27  also show that the Prozac helped alleviate plaintiff's depression.

28                                     6

(See, e.g., TR 289).  But that from aside, the records show no treatment for plaintiff's diagnosed physical impairments.

Moreover, although not required to do so, the ALJ cited another reason beyond this conflict to reject Dr. Tincopa's opinion. Specifically, the ALJ noted that Dr. Tincopa had not chronicled plaintiff's ongoing alcohol abuse.  Specifically, the ALJ observed that Dr. Tincopa's May 2007 assessment of plaintiff did not include alcohol abuse in plaintiff's diagnosis.  (TR 16).  This omission is significant, given that the record shows plaintiff's long history of alcohol abuse and that plaintiff testified that, during that same May 2007 period, she was still drinking "quite a bit."  (TR 12, 60-61).  More importantly, plaintiff testified that she had reported her alcohol abuse to Dr. Tincopa and that Dr. Tincopa had warned plaintiff about her alcohol abuse.  (TR 60-62).  Despite this, Dr. Tincopa's diagnosis did not include alcohol abuse.

### ii.  Dr. Wilson

The ALJ did not materially err in evaluating the findings of Dr. Wilson.  First, the ALJ properly summarized those findings.  As the ALJ noted, Dr. Wilson's treatment notes showed that plaintiff's mental condition improved with treatment.  (TR 15, 160-63).  According to those notes, plaintiff's depression had been reduced and was not disabling as early as August 2004, and, by December 2006, Dr. Wilson found "very little to suggest residual depression."  (Id.).  Moreover, the treatment notes that plaintiff cites to show the ALJ's purported error support, rather than undermine, the ALJ's conclusions.  Indeed, with the exception of one visit in September 2005, when plaintiff's depression was assessed as moderate, it appears that plaintiff's depression was

consistently assessed as mild.   (See, e.g., TR 273-78).   In short,
while the ALJ did not chronicle each aspect of the progression of
plaintiff's treatment, the ALJ nevertheless accurately provided an
overall summary of that treatment.   And to the extent that he did not,
the error was harmless because the treatment notes show that, for the
most part, plaintiff's depression was mild or became mild with
treatment.

Second, the ALJ's summary of Dr. Wilson's findings were supported
by substantial evidence in the record.   For example, an examining
psychiatrist observed that plaintiff showed little objective evidence of
mental impairment.   (TR 207-12).   Moreover, the examining psychiatrist
assessed plaintiff with a GAF score of 70.[2]   (TR 211).   Such a score
indicates only mild impairment symptoms (e.g., depressed mood and mild
insomnia) or some difficulty in social, occupational, or school
functioning.   American Psychiatric Association, Diagnostic and
Statistical Manual of Mental Disorders p. 34 (4th ed. 2000 (DSM-IV)).
Likewise, as noted by the ALJ, a non-examining state agency psychiatrist
similarly found that plaintiff's depression had no significant impact
other than moderately impairing plaintiff's ability to perform detailed
tasks.   (TR 16, 241-44).   And notably, the ALJ's findings regarding
plaintiff's ability to work precluded such tasks.   (TR 14).

Finally, to the extent that Dr. Wilson's findings conflicted with
those of the examining and the state agency physicians - which the court
does not believe to be the case - the ALJ was free to resolve that

---

[2]   "A GAF score is a rough estimate of an individual's
psychological, social, and occupational functioning used to
reflect the individual's need for treatment."   Vargas v. Lambert,
159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

1  conflict against Dr. Wilson.  Morgan v. Commissioner, 169 F.3d 595, 601

2  (9th Cir. 1999) (questions of credibility and resolution of conflicts in

3  evidence are function solely of the Commissioner).

4

5        B.    Subjective statements and credibility (Issue # 2)

6        Plaintiff   next   contends   the   ALJ   improperly   evaluated   her

7  credibility.   Specifically, plaintiff faults the ALJ for failing to

8  consider plaintiff's allegations regarding the purported disabling

9  limitations  caused  by  her  impairments  and  the  side  effects  she

10 experiences from taking her prescribed medication.

11       Absent affirmative evidence of malingering, if a plaintiff has

12 produced evidence of an impairment that reasonably could give rise to

13 the symptoms alleged, the Commissioner may reject plaintiff's subjective

14 testimony regarding the extent of those symptoms only for clear and

15 convincing reasons.   Lester v. Chater, 81 F.3d at 834.   If the ALJ

16 rejects the plaintiff's allegations as not credible, he or she "must

17 specifically make findings which support this conclusion."  Bunnell v.

18 Sullivan, 947 F.2d at 345.

19       An  ALJ  may,  however,  use  ordinary  techniques  of  credibility

20 evaluation in weighing a plaintiff's subjective complaints and thus may

21 consider such evidence as prior inconsistent statements, testimony that

22 appears less than candid, unexplained or inadequately explained failure

23 to seek treatment or to follow a prescribed course of treatment, and

24 plaintiff's daily activities.  Smolen v. Chater, 80 F.3d 1272, 1281 (9th

25 Cir. 1996).   If the ALJ finds specific reasons suggesting plaintiff's

26 testimony is generally not credible, plaintiff's symptom testimony may

27 likewise be rejected.  Thomas v. Barnhart, 278 F.3d 957, 960 (9th Cir.

28                                      9

1  2002)(citation omitted).   When the "ALJ's credibility finding is

2  supported by substantial evidence in the record, [the court] may not

3  engage in second guessing." Id. at 958.

4    Moreover, an ALJ must consider all factors that might have a

5  significant impact on an individual's ability to work, including the

6  side effects of medication. Erickson v. Shalala, 9 F.3d 813, 817-18

7  (9th Cir. 1993).   When a plaintiff testifies about experiencing a known

8  side effect associated with a particular medication, the ALJ may

9  disregard the testimony only if he "support[s] that decision with

10  specific findings similar to those required for excess pain testimony."

11  Varney v. Sec'y of Health and Human Servs., 846 F.2d 581, 585(9th Cir.

12  1988), modified by, 859 F.2d 1396 (9th Cir. 1988).   However, side

13  effects not "severe enough to affect [plaintiff's] ability to work" are

14  properly excluded from consideration. Osenbrock v. Apfel, 240 F.3d

15  1157, 1164 (9th Cir. 2001). Ultimately, a plaintiff bears the burden of

16  demonstrating that his use of medications caused a disabling impairment.

17  See Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985)(plaintiff

18  failed to meet burden of proving medication impaired his ability to work

19  because he produced no clinical evidence).

20    Here, the ALJ did not materially err in evaluating plaintiff's

21  statements and testimony. Although plaintiff contends that the ALJ

22  "made no specific findings regarding [plaintiff's] credibility," the ALJ

23  made just such a finding. (TR 15).   Specifically, the ALJ found that

24  plaintiff's allegations of "markedly limiting physical and mental

25  symptoms throughout the period at issue" were not credible. (Id.).

26    Moreover, the ALJ cited specific reasons for reaching that finding.

27  In particular, the ALJ noted that plaintiff engaged in part-time work

28                                        10

1  throughout the relevant time period and that she had been walking to
2  improve her mood.  (TR 15).  Additionally, the ALJ noted that medical
3  records from 2004 showed that plaintiff elected to forego a doctor's
4  appointment in favor of attending a conference.  (Id.).  The ALJ did
5  not cite these activities to show that plaintiff was capable of work,
6  but instead to show that plaintiff's statements regarding her purported
7  markedly limiting physical and mental symptoms were not as serious as
8  plaintiff alleged them to be.  (Id.).  And indeed, such activity on
9  plaintiff's part stands in sharp contrast to plaintiff's statements that
10 she was essentially incapable of any activity.  (See TR 125-26).
11 Moreover, plaintiff's allegations of the allegedly disabling impact of
12 her depression conflict with the statements of not only her own treating
13 physician, who found plaintiff's depression mild and not disabling, but
14 also with those of both the examining psychiatrist and the state agency
15 psychiatrist.  (See supra).

16     Apart from that, the ALJ noted that plaintiff had made inconsistent
17 statements.  Specifically, the ALJ noted that plaintiff had not been
18 consistent in reporting her alcohol abuse.  (TR 12, 16).  Conflicting
19 inconsistent testimony concerning alcohol use can contribute to an
20 adverse credibility finding.  Robbins v. Commissioner, 466 F.3d 880, 884
21 (9th Cir. 2006)(citing Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir.
22 1999)).[3]

23     For these same reasons, the ALJ did not materially err in failing
24
25 [3] The ALJ also observed that plaintiff's long history of
   alcohol abuse, which continued up until the time of the hearing
   before the ALJ, likely contributed to the severity and impact of
26 plaintiff's depression.  (TR 12-13).  The record supports this
   observation, notwithstanding that the ALJ made no definitive
27 finding on this issue.

28                                    11

1  to discuss the side effects that plaintiff purportedly experienced from
2  taking medications. Having already found plaintiff to be lacking in
3  credibility, the ALJ did not have to discuss plaintiff's purported side
4  effects.  And in any event, plaintiff did not meet her burden to show
5  that the purported side effects were disabling.  See Miller v. Heckler,
6  770 F.2d 845, 849 (9th Cir. 1985).  On the contrary, in 2006, she
7  reported that she was "quite satisfied with the effects of her
8  medication."  (TR 274).  That same 2006 report states that plaintiff
9  experienced "no side effect[s]" and that she was in "good compliance"
10  with her medications.  (Id.).

11      In short, the reasons cited by the ALJ support the ALJ's decision
12  to reject plaintiff's credibility.  Accordingly, the ALJ committed no
13  material error.

14

15                        **CONCLUSION**

16      If the evidence can reasonably support either affirming or
17  reversing the Commissioner's conclusion, the court may not substitute
18  its judgment for that of the Commissioner.  Flaten v. Sec'y of Health
19  and Human Servs., 44 F.3d at 1457.

20      After careful consideration of the record as a whole, the
21  magistrate judge concludes that the Commissioner's decision is supported
22  by substantial evidence and is free from material legal error.

23  ///
24  ///
25  ///
26  ///
27  ///
28
                                    12

1  Accordingly, it is ordered that judgment be entered in favor of the

2  Commissioner.

3

4  DATED: 7/8/09

5

6  CAROLYN TURCHIN
   UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        13

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

**DECISION**

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability, Disability Insurance |
| Dina Saunders | Benefits, and Supplemental Security Income |
| (Claimant) | |
| | |
| (Wage Earner) | (Social Security Number) |

## JURISDICTION AND PROCEDURAL HISTORY

On June 9, 2005, the claimant filed a Title II application for a period of disability and disability
insurance benefits. The claimant also filed a Title XVI application for supplemental security
income on June 23, 2005. In both applications, the claimant alleged disability beginning October
1, 2002. The claims were denied initially on January 5, 2006. Thereafter, the claimant filed a
timely written request for hearing on January 27, 2006 (20 CFR 404.929 *et seq.* and 416.1429 *et
seq.*). The claimant appeared and testified at a hearing held on May 16, 2007, in Downey,
California. Susan D. Green, an impartial vocational expert, also appeared at the hearing.
Josephine Hwang, Attorney at Law, represented the claimant at the hearing.

## ISSUES

The issue is whether the claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of
the Social Security Act. Disability is defined as the inability to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment or combination
of impairments that can be expected to result in death or that has lasted or can be expected to last
for a continuous period of not less than 12 months.

With respect to the claim for a period of disability and disability insurance benefits, there is an
additional issue whether the insured status requirements of sections 216(i) and 223 of the Social
Security Act are met. The claimant's earnings record shows that the claimant has acquired
sufficient quarters of coverage to remain insured through September 30, 2006. Thus, the
claimant must establish disability on or before that date in order to be entitled to a period of
disability and disability insurance benefits.

After careful consideration of all the evidence, the undersigned Administrative Law Judge
concludes the claimant has not been under a disability within the meaning of the Social Security
Act from October 1, 2002 through the date of this decision.

See Next Page

**10**



Dina Saunders                                     Page 2 of 7

## **APPLICABLE LAW**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a) and 416.920(a)). The steps are followed in order. If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the undersigned must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b) and 416.920(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a) and 416.972(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b) and 416.972(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574, 404.1575, 416.974, and 416.975). If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, the undersigned must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509 and 416.909), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the undersigned must first determine the claimant's residual functional capacity (20 CFR 404.1520(e) and 416.920(e)). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, the undersigned must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e), 404.1545, 416.920(e), and 416.945; SSR 96-8p).

See Next Page



Dina Saunders (                                    Page 3 of 7

Next, the undersigned must determine at step four whether the claimant has the residual functional capacity to perform the requirements of her past relevant work (20 CFR 404.1520(f) and 416.920(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b), 404.1565, 416.960(b), and 416.965). If the claimant has the residual functional capacity to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g) and 416.920(g)), the undersigned must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the residual functional capacity, age, education, and work experience (20 CFR 404.1512(g), 404.1560(c), 416.912(g) and 416.960(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, the undersigned makes the following findings:

**1.   The claimant met the insured status requirements of the Social Security Act through September 30, 2006.**

**2.   The claimant has not engaged in substantial gainful activity since October 1, 2002, her alleged onset date (20 CFR 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).**

**3.   The claimant has had the following severe impairments:  Major Depression; alcohol abuse; and a chronic pain syndrome (20 CFR 404.1520(c) and 416.920(c)).**

The record reflects the claimant's longitudinal history of mental health treatment.  Notably, treatment records dated 2001 and 2002 refer to ongoing alcohol abuse (e.g. Exhibits 1F/52 and 1F/47), while more recently, treatment records apparently do not indicate alcohol abuse.  On the other hand, the report of an October 2005 psychiatric consultative examination relates the claimant's admission of ongoing alcohol abuse (Exhibit 2F).  And at the May 2007 hearing, she testified that she still drinks quite a bit.

Mental health treatment records refer to ongoing depressive symptoms.  However, such symptoms would likely have been exacerbated throughout the period at issue by her ongoing





alcohol abuse. Also notable, prior to the instant alleged onset date, she was hospitalized for depression and suicidal ideation (Exhibit 7F/2).

With regard to the claimant's complaints of physical impairment, the medical evidence of record does not document any treatment records. While the record reflects the claimant's allegation that she has been diagnosed with fibromyalgia, moreover, no related medical treatment is shown. And in an assessment dated May 2007, Dr. L. Tincopa does not diagnose fibromyalgia but refers to headaches and joint pain (Exhibit 9F/1).

Similarly, in the report of a November 2005 rheumatological consultative examination, the examiner diagnoses a chronic pain syndrome. The report nonetheless shows little objective evidence of impairment. In particular, the examiner observes that the claimant retains a normal gait, adequate motor strength, and a normal range of motion (Exhibit 3F).

**4. The claimant has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).**

The claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, or 12.09. In making this finding, the undersigned has considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has had mild restriction. In social functioning, the claimant has had mild difficulties. With regard to concentration, persistence or pace, the claimant has had mild difficulties. As for episodes of decompensation, the claimant has experienced no episodes of decompensation.

Because the claimant's mental impairments have not caused at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, the "paragraph B" criteria are not satisfied.

The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

The limitations identified in the "paragraph B" and "paragraph C" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the


EXHIBIT 13

Dina Saunders (███████████)                                    Page 5 of 7

adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Accordingly, the undersigned has translated the above "B" and "C" criteria findings into work-related functions in the residual functional capacity assessment below.

**5.  After careful consideration of the entire record, the undersigned finds that the claimant has had a residual functional capacity to perform medium work except for moderate impairment in performing especially detailed and/or complex tasks.**

In making this finding, the undersigned considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements:

1. The claimant's daily activities;

2. The location, duration, frequency, and intensity of the claimant's pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms;

See Next Page



6. Any measures other than treatment the claimant uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms (SSR 96-7p).

In the aforementioned May 2007 assessment, Dr. L. Tincopa describes the claimant's residual functional capacity in terms consistent with less than a full range of even sedentary level work (Exhibit 9F).  As noted above, however, the medical evidence of record does not document any medical treatment for the claimant's physical complaints, including treatment from Dr. Tincopa. Thus, Dr. Tincopa's opinion is not credited with the weight accorded to that of a long-term treating physician.

On the other hand, in the report of the November 2005 rheumatological consultative examination, the examiner describes the claimant's residual functional capacity in terms essentially consistent with medium level exertion (Exhibit 3F/4).

This opinion seems well-supported by the overall record and is therefore credited with controlling weight.  Additionally, June 2004 mental health treatment records relate the claimant's admission that she has been walking more in order to improve her mood (Exhibit 1F/15).

Notably, treatment records dated July 2004 relate the claimant's admission that she had completed her program of studies at Pasadena College (Exhibit 1F/12).  Further, the claimant testified at the hearing that she had performed some part-time work throughout the period at issue.

Likewise, December 2004 treatment records relate her admission that she had started part-time work at Pacific Clinics (Exhibit 1F/6).  And January 2006 treatment records relate her admission that she is currently working, helping an elderly lady (Exhibit 8F/4).

Also notable, May 2005 treatment records relate her admission that she had missed an appointment because of her internship and that she is applying for work (Exhibit 1F/4).  And September 2004 treatment records relate her admission that she had missed an appointment because she had been attending a Latino conference (Exhibit 1F/8).

The claimant's activities thus seem somewhat inconsistent with her allegations of markedly limiting physical and mental symptoms throughout the period at issue.

Altogether, treatment records suggest that the claimant's condition has improved with medication and treatment.  In treatment records dated August 2004, a clinician specifically affirms that the claimant's depression has been reduced and is not currently disabling (Exhibit 1F/9), and in December 2004 treatment records, the clinician observes "very little to suggest residual depression" (Exhibit 1F/6).

See Next Page



Dina Saunders ▬▬▬▬▬                                    Page 7 of 7

Similarly, the report of the October 2005 psychiatric consultative examination shows little objective evidence of mental impairment, and the examiner likewise assesses her GAF as 70 (Exhibit 2F/5), indicative of only mildly limiting symptoms.

In an assessment dated October 2005, a State Agency psychiatrist opines that the claimant has no significant limitation in performing work-related mental functions except for moderate impairment in performing especially detailed tasks (Exhibit 6F).

This opinion seems well-supported by the overall record and is therefore credited with controlling weight.

As suggested above, the record reflects some apparent inconsistencies with regard to the claimant's allegations of alcohol abuse.  Again, throughout the period at issue, mental health treatment records do not seem to refer to the claimant's ongoing alcohol abuse, a circumstance that casts a measure of doubt upon their credibility.  In his May 2007 assessment, Dr. Tincopa also does not include alcohol abuse among the claimant's diagnoses (Exhibit 9F/1).

**6. The claimant has been capable of performing her past relevant work (20 CFR 404.1565 and 416.965).**

In consideration of the residual functional capacity assessed herein, the claimant is found to have retained the ability to perform her past relevant work as a home health attendant.   Likewise, the Dictionary of Occupational Titles describes this occupation as medium, semi-skilled work (D.O.T. 354.377-014, SVP: 3).

**7. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2002 through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).**

### DECISION

Based on the application for a period of disability and disability insurance benefits filed on June 9, 2005, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act.

Based on the application for supplemental security income filed on June 23, 2005, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

Cynthia A Minter
Administrative Law Judge

**AUG 1 6 2007**
Date

EXHIBIT